25CA1847 Peo in Interest of Tuitea 12-04-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1847
Pueblo County District Court No. 19MH7
Honorable Amiel Markenson, Judge

---

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of Jeremiah Ceo Tuitea,

Respondent-Appellant.

---

ORDER AFFIRMED

Division VI
Opinion by JUDGE GOMEZ
Welling and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 4, 2025

---

Cynthia Mitchell, County Attorney, Kate H. Shafer, Special Assistant County Attorney, Pueblo, Colorado, for Petitioner-Appellee

Tezak Law, P.C., Mary Tezak, Florence, Colorado, for Respondent-Appellant

¶ 1     Respondent, Jeremiah Ceo Tuitea, appeals the district court's order authorizing the staff at the Colorado Mental Health Hospital in Pueblo (the hospital) to treat him with electroconvulsive therapy (ECT).  We affirm.

## I.     Background

¶ 2     Tuitea was civilly committed to the hospital in 2019.  After receiving short-term treatment for six months, Tuitea was certified for long-term care and treatment by the hospital for schizoaffective disorder, bipolar type.  His treatment included a regimen of antipsychotic medications.  In June 2024, the hospital also began treating him with ECT due to persistent psychotic symptoms, mood symptoms, and significant aggressive behavior.

¶ 3     In August 2025, the People petitioned the district court to review Tuitea's refusal of treatment.  The court held an evidentiary hearing, at which Dr. Paul Mattox, Tuitea's psychiatrist, and Tuitea testified.  Dr. Mattox described Tuitea's disorder and accompanying symptoms.  He also described ECT and its possible side effects and opined that it was necessary to treat Tuitea's symptoms.  Tuitea testified that he believes he has a mental illness but provided conflicting testimony as to whether he was willing to agree to ECT.

He also testified that he hadn't experienced any side effects from ECT but believed that it was "dangerous."

¶ 4     The district court found that Dr. Mattox had testified "credibly and persuasively," and that the People had proved the criteria as set forth in *People v. Medina*, 705 P.2d 961, 973 (Colo. 1985), and *People in Interest of M.K.M.*, 765 P.2d 1075, 1076 (Colo. App. 1988). Accordingly, the court granted the petition authorizing the staff at the hospital to involuntarily administer ECT.

## II.     Applicable Law and Standard of Review

¶ 5     A district court may order the involuntary administration of medication if the People prove by clear and convincing evidence that (1) the patient is incompetent to effectively participate in the treatment decision; (2) the treatment is necessary to prevent a significant and likely long-term deterioration in the patient's mental health condition or to prevent the likelihood of the patient causing serious harm to themself or others at the institution; (3) a less intrusive treatment alternative is not available; and (4) the patient's need for treatment is sufficiently compelling to override any bona fide and legitimate interest of the patient in refusing treatment. *Medina*, 705 P.2d at 973.  The *Medina* elements apply in cases

involving the proposed involuntary administration of ECT.  *See M.K.M.*, 765 P.2d at 1076.

¶ 6    Application of the *Medina* test involves mixed questions of fact and law.  *People v. Marquardt*, 2016 CO 4, ¶ 8.  We defer to the district court's factual findings if they have record support and review its legal conclusions de novo.  *Id.*  It is for the district court, as the fact finder, to determine the credibility of witnesses; the sufficiency, probative effect, and the weight of the evidence; and the inferences and conclusions to be drawn from the evidence.  *People in Interest of R.C.*, 2019 COA 99M, ¶ 7.

¶ 7    When a patient challenges the sufficiency of the evidence supporting an involuntary medication order, we must affirm if the evidence, viewed as a whole and in the light most favorable to the People, is sufficient to support the order.  *People in Interest of R.K.L.*, 2016 COA 84, ¶ 13.  The testimony of the treating psychiatrist alone may suffice.  *Id.* at ¶ 30.

### III.    Analysis

¶ 8    Tuitea contends that the evidence was insufficient to prove the fourth *Medina* element.  We disagree.

¶ 9        In assessing the fourth *Medina* element — whether the patient's need for treatment is sufficiently compelling to override any legitimate interest in refusing treatment — a court must consider "whether the patient's refusal is bona fide and legitimate" and, if it is, "whether the prognosis without treatment is so unfavorable that the patient's personal preference must yield to the legitimate interests of the state in preserving the life and health of the patient placed in its charge and in protecting the safety of those in the institution." *Medina*, 705 P.2d at 974.

¶ 10       Tuitea contends that the state's interest in treating him is insufficient to overcome his bona fide and legitimate interest in "avoiding serious side effects" — namely, anxiety related to the procedure, his belief that ECT is dangerous, and tiredness and confusion when the treatment is over.

¶ 11       As to Tuitea's appellate contentions that ECT treatments cause unwanted anxiety and are dangerous, at the hearing he didn't advance those as reasons for refusing to participate in ECT. Dr. Mattox testified that "about six months ago, prior to our hearing at that time," Tuitea "express[ed] concern about anxiety relating to going to the treatments" but "that is not something that he's

4

recently expressed." And nothing in Tuitea's testimony related to any feelings of anxiety concerning ECT treatments. Tuitea also testified that he wasn't experiencing *any* side effects from the ECT treatments. His only pertinent testimony was that he wanted the court to know that ECT was "dangerous," but he didn't provide this as a reason for refusing to participate in it. Moreover, Dr. Mattox confirmed that Tuitea doesn't have any underlying health conditions that could be affected or worsened by ECT. Dr. Mattox also testified that Tuitea hadn't in recent months voiced any side effects from, or complaints about, ECT. He further explained that while there can be "long-term memory risks" from ECT, Tuitea's "memory and cognitive abilities ha[d] improved," and his treatment team hadn't observed any side effects related to any long-term cognitive memory problems.

¶ 12    As to the only stated side effect Tuitea was apparently experiencing (which Dr. Mattox testified about) — tiredness and confusion following the treatment — the district court expressly acknowledged that "those are symptoms that are a bona fide reason for not wanting to take [the proposed treatment]." However, after weighing Tuitea's bona fide and legitimate interests against the

5

state's interest in preserving his life and health and protecting the safety of those in the institution, the court found that the need to administer ECT is sufficiently compelling to override his concerns.

¶ 13 These findings enjoy record support. Dr. Mattox opined that the failure to administer ECT would be more harmful than the risks posed by it. In support of this opinion, Dr. Mattox explained that the hospital began ECT "because of [Tuitea's] inability to progress towards discharge due to his treatment resistant psychiatric symptoms and recurrent aggressive behavior." And since receiving ECT, Tuitea had "responded very well" and experienced "dramatic positive benefits." Dr. Mattox explained that Tuitea's "auditory hallucinations, delusional thinking, and disorganized thinking ha[d] decreased significantly" and "[h]is aggressive behavior ha[d] essentially resolved." Dr. Mattox described Tuitea as "more alert, communicative, and interactive."

¶ 14 Dr. Mattox also testified that if ECT were to be discontinued, he didn't "see [Tuitea] having a significant likelihood of being able to be discharged into the community." Instead, Dr. Mattox opined that Tuitea would risk "deterioration to his prior active state of psychosis, mood instability, and aggressive behavior." Indeed,

Dr. Mattox described how previous attempts to decrease the frequency of ECT treatments had resulted in a return of Tuitea's psychotic symptoms and aggressive behavior.

¶ 15    To be sure, ECT treatment is not without risks and side effects.  But there was sufficient evidence in the record to conclude that these risks and side effects are outweighed by the benefits of ECT to improve Tuitea's psychiatric symptoms and prevent long-term deterioration in his mental condition.  Accordingly, the evidence was sufficient to support the court's finding on the fourth *Medina* element.

¶ 16    Because Tuitea doesn't challenge the district court's findings concerning the other *Medina* elements, we don't consider those elements, and we conclude that the evidence was sufficient to support the involuntary medication order.

## IV.   Disposition

¶ 17    The order is affirmed.

JUDGE WELLING and JUDGE SULLIVAN concur.